IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MATT HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-2263-JWL |
| ) | |
| CENTURY CONCRETE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

**MEMORANDUM AND ORDER**

In this action, plaintiff Matt Hamilton asserts a claim against his former employer, defendant Century Concrete, Inc., for racial discrimination in violation of 42 U.S.C. § 1981. The matter comes before the Court at this time on defendant's motion for summary judgment (Doc. # 40) and defendant's motion to amend the Pretrial Order (Doc. # 47). As set forth below, defendant's motion for summary judgment is granted in part and denied in part. The motion to amend is granted as unopposed.

**I.   Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the

nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural

shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II.     Unsigned Affidavits Submitted by Plaintiff

In opposition to summary judgment, plaintiff has submitted a total of five affidavits by himself and two other individuals. None of the affidavits is signed, however. Instead, in each case, on the signature line above the affiant's typed name, the name has again been typed after the designation "/s/". Moreover, although each affidavit contains a statement that it has been "[s]ubscribed and sworn" before a particular notary on a particular date, there is no signature or stamp by the notary, and the notary's name is merely typed on the signature line after the designation "/s/". Defendant objects to the submission of such unsigned statements.

The Court agrees that the affidavits may not be considered for purposes of summary judgment. The Court's electronic-filing rules provide that an attorney's name typed after the designation "s/", together with the use of a user log-in and password, represent the attorney's signature on a filing. *See* D. Kan. Rule 5.4.8. The Court's electronic-filing procedures provide, however, that documents requiring the signature of a non-attorney, including notarized documents, must be filed after scanning by the filing party or the clerk's office. *See* Administrative Procs. for ECF - Civil at II.C.1 (D. Kan.). Plaintiff failed to follow this required procedure. In the absence of signatures by

either the affiants or the notary, the affiants' statements in this case cannot be considered to have been sworn to or made under penalty of perjury, and the statements cannot be considered in opposition to summary judgment on plaintiff's claims. *See Flemming v. Corrections Corp. of Am.*, No. 04-6312, 143 Fed. App'x 921, 925 n.1 (10th Cir. July 22, 2005) ("An unsigned affidavit, however, does not constitute evidence under Fed. R. Civ. P. 56(e)."); *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006) (affirming district's court's exclusion from summary judgment consideration of unsigned, electronically-filed affidavits).[1]

### III. Hostile Work Environment Claim

Plaintiff, an African-American, has alleged that he was subjected to discrimination based on his race in the form of a racially-hostile work environment. To survive defendant's motion for summary judgment on this claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations

---

[1]Even though defendant first raised this issue on May 18, 2007, in its response to plaintiff's motion to supplement its summary judgment submission with the fifth affidavit, plaintiff has not responded to defendant's objection or even attempted to substitute properly-signed affidavits. The Court further notes that it does not appear that consideration of the affidavits would alter any of the conclusions reached herein.

and quotations omitted). The plaintiff must show that he was "targeted for harassment because of his race or national origin." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The court analyzes the atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a "reasonable person in the plaintiff's position." *McCowan*, 273 F.3d at 923 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Plaintiff alleges that he suffered racial harassment after he was transferred to defendant's Edwardsville facility in November 2002, up to the time that he left defendant's employment in September 2004. During that period, plaintiff was supervised, in succession, by Ron White, Jerry Dudziak, and Matt Thornton. Defendant seeks summary judgment on plaintiff's harassment claim as alleged during each of these three intervals.

        A.     Environment Under Supervisor Ron White

              1.     PLAINTIFF'S SUBJECTIVE PERCEPTION

5

Plaintiff alleges that he was subjected to a racially-hostile work environment, including racial comments and jokes involving use of the word "nigger" from co-workers on a daily basis, during the interval from November 2002 to February 2004 when Ron White acted as plaintiff's supervisor. Defendant first argues that plaintiff cannot establish actionable harassment during this period as a matter of law because plaintiff did not subjectively perceive the environment to be hostile or abusive. *See Harris*, 510 U.S. at 21-22 (conduct has not altered conditions of employment if the victim does not subjectively perceive the environment to be hostile).

Plaintiff testified in his deposition that various co-workers made the offensive jokes and comments, although he could remember the names of only four of those men. Defendant relies on the following testimony by plaintiff concerning three co-worker's use of the word "nigger":

> Q. So was [the first co-worker] using [the word "nigger"] in a hostile manner towards you?
>
> A. Just making jokes.
>
> Q. I mean, you didn't perceive it as being a hostile comment directed in your attention?
>
> A. Just jokes.
>
> . . .
>
> Q. You didn't perceive that [the second co-worker] was being hostile towards you?
>
> A. No. He was just making jokes.

6

>   Q. How about when [the third co-worker] used [the word "nigger"]? Did you perceive it as being hostile towards you?
>
>   A. No. He was playing.

Defendant argues that plaintiff has admitted, by this testimony, that he did not have the requisite subjective perception of hostility.

Viewed in the light most favorable to plaintiff, however, this testimony merely indicates that plaintiff perceived that his co-workers, in merely joking, did not *intend* for their comments to be hostile. It does not necessarily foreclose the possibility that plaintiff subjectively perceived his *environment* to be hostile as a result of his co-workers' constant use of the racial slur. In fact, immediately following his testimony excerpted above, plaintiff testified that "[p]eople that make jokes and play, they don't really know or assume that it's hurting somebody's feelings." Plaintiff also testified that he "was just suffering through" the jokes. Thus, plaintiff's testimony, viewed as a whole, provides evidence from which a reasonable jury could find that plaintiff subjectively perceived his environment as abusive. Defendant is not entitled to summary judgment on this basis.[2]

---

[2]In its reply brief, defendant also argues that the racially-offensive comments alleged to have been made during the Ron White interval were only isolated and sporadic, and thus do not rise to the level of actionable harassment. The Court generally does not consider issues not raised in a party's principal brief. *See Acker v. Burlington N. & Santa Fe Ry. Co.*, 388 F. Supp. 2d 1299, 1302 n.2 (D. Kan. 2005). Moreover, even if this issue had been properly raised, plaintiff's testimony that the comments and use of the word "nigger" occurred on a daily basis would be sufficient to raise an issue of fact on this question.

## 2.     EMPLOYER LIABILITY

In the alternative, defendant argues that even assuming that plaintiff was subjected to a racially hostile work environment while Ron White was his supervisor, he cannot establish defendant's own liability for that conduct as a matter of law. Plaintiff alleges that defendant is directly liable for the harassment under a negligence theory, on the basis that defendant failed to remedy a hostile work environment that it knew or should have known about. *See Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001) (noting possible bases of an employer's liability for a hostile work environment).[3] Defendant argues that since plaintiff never complained to management about a racially hostile work environment, it did not have the knowledge necessary to establish negligence.

Summary judgment is not appropriate on this basis. Plaintiff testified that the racially-insensitive comments and jokes to which he was subjected on a daily basis were made in the presence of his supervisor, Ron White. The supervisor's actual knowledge of the racial harassment of plaintiff may be imputed to defendant, thereby triggering defendant's duty to respond. *See Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 542 (10th Cir. 1998); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998). There

---

[3]In response to defendant's invocation of the *Faragher* affirmative defense to an employer's vicarious liability for harassment, plaintiff states that his claims against defendant are premised only on a theory of direct liability. Accordingly, to the extent that plaintiff ever asserted a claim of vicarious liability in this case, such claim is deemed abandoned.

is no evidence that Mr. White or any higher management for defendant did anything in response to the conduct that Mr. White witnessed. Accordingly, there is evidence from which a reasonable jury could conclude that defendant was negligent with respect to a racially hostile work environment existing during plaintiff's employment under Ron White from November 2002 to February 2004, and summary judgment is denied on that claim.

### B. Environment Under Supervisor Jerry Dudziak

Jerry Dudziak succeeded Mr. White and served as plaintiff's supervisor for the period from February 2004 to July 2004. Plaintiff testified unequivocally that there was no racially-harassing conduct during this period. Accordingly, summary judgment is awarded to defendant on any claim by plaintiff of a racially hostile work environment during the period of Mr. Dudziak's supervision.

### C. Environment Under Supervisor Matt Thornton

#### 1. EXISTENCE OF HOSTILE WORK ENVIRONMENT

Defendant also seeks summary judgment on plaintiff's hostile work environment claim to the extent that he alleges harassment from July 2004 to September 2004, when he was supervised by Matt Thornton. Plaintiff alleges that Mr. Thornton himself harassed him based on his race during that period. Defendant argues that plaintiff has not provided evidence of conduct sufficient to constitute actionable harassment of plaintiff. In particular, defendant notes that much of the conduct by Mr. Thornton cited by plaintiff was directed at Larry Smith, another employee, and not at plaintiff.

With respect to conduct directed specifically at him, plaintiff did testify that Mr. Thornton, over the radio, would make fun of the way plaintiff was speaking and would act as though he could not understand plaintiff. Moreover, it is undisputed that Mr. Thornton did use racially-offensive language to other employees, and a jury has found that Mr. Smith, plaintiff's co-worker, was subjected to a racially-hostile work environment based on conduct by Mr. Thornton. *See Mendelsohn v. Sprint/United Mgmt. Co.*, 466 F.3d 1223, 1226-27 (10th Cir. 2006) (evidence of treatment of other employees is relevant to issue of discriminatory intent). In light of this evidence of Mr. Thornton's racial animus, the Court concludes that a reasonable jury could find that plaintiff was in fact "targeted for harassment because of his race" based on Mr. Thornton's conduct over the company raid. *See Herrera*, 474 F.3d at 680. Because that conduct occurred "all the time" and "every time [plaintiff] would say something," a reasonable jury could find that the conduct was sufficiently pervasive, and summary judgment is not appropriate.

### 2. EMPLOYER LIABILITY

Plaintiff alleges that defendant is directly liable, under a negligence theory, for any racially-hostile work environment created by Mr. Thornton on the basis that defendant did not reasonably respond to harassing conduct by Mr. Thornton of which defendant knew or should have known. Defendant argues that it is entitled to summary judgment on this issue of employer liability because defendant's management was not

aware of any harassment of plaintiff by Mr. Thornton and because defendant gave Mr. Thornton a warning after learning of harassment of Larry Smith, plaintiff's co-worker.

The Court concludes that defendant's negligence with respect to its treatment of harassment by Mr. Thornton is a question of fact for the jury. It is undisputed that a manager for defendant received at least one complaint from Larry Smith about Mr. Thornton's racially-offensive language and conduct. Moreover, Mr. Smith testified that Mr. Thornton's offensive conduct continued unchanged after the warning. Thus, there is evidence from which a jury could find that defendant did not act reasonably in responding to racial harassment by Mr. Thornton, with the result that plaintiff was harassed also. Summary judgment is denied on this claim.

### IV.  Disparate Treatment Claims

Plaintiff also alleges claims of disparate treatment by defendant based on his race. As plaintiff has offered no direct evidence of discrimination with respect to such claims, the court analyzes them under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Pursuant to the *McDonnell Douglas* approach, the plaintiff must first make out a prima facie case by demonstrating membership in a protected class and an adverse employment action occurring under circumstances giving rise to an inference of discrimination. *See Hysten v. Burlington Northern & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10ths Cir. 2002). Ordinarily, the

necessary inference of discrimination is satisfied by proof that the employer treated similarly-situated employees more favorably. *See id.*

If a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *See Orr*, 417 F.3d at 1149 (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)). Defendant's burden in this regard is "exceedingly light". *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002). The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *See Orr*, 417 F.3d at 1149.

In the Pretrial Order, plaintiff has alleged that defendant discriminated based on his race in failing to provide him with a new truck, in failing to promote him to a training position, and in not allowing him the same "lines of progression" as other employees. In seeking summary judgment on plaintiff's disparate treatment claims, defendant has set forth legitimate non-discriminatory reasons for its actions, and it argues generally that plaintiff has failed to provide any evidence of pretext. In response, plaintiff does not advance any arguments under the applicable *McDonnell Douglas* framework, but instead appears to address those particular acts of alleged discrimination within the context of whether a hostile work environment existed.

The Court agrees with defendant that plaintiff has failed to satisfy his burden with respect to any disparate treatment claim. With respect to defendant's attack on these claims, plaintiff argues only that because defendant's decisions were not mandated by

written policies and procedures, the decisions must have been based only on subjective criteria, which in turn may support an inference of discrimination. Plaintiff has failed, however, to explain or provide evidence showing how such subjective decision-making was suspect with respect to any particular decision. Thus, plaintiff has not provided any evidence of pretext. The Court will briefly address each such claim in turn.

1. NEW TRUCK ASSIGNMENT

Plaintiff alleges that defendant discriminated against him by failing to assign him one of its new trucks in January or February of 2004, as defendant had previously indicated that it would. First, the Court agrees that failing to receive a new truck for use on the job does not constitute an adverse employment action, as required for satisfaction of plaintiff's prima facie case. Conduct constitutes an adverse employment action for this purpose when it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)). "Actions presenting nothing beyond a mere inconvenience or alteration of responsibilities, however, do not constitute adverse employment action." *Id.* (internal quotation omitted). Plaintiff has not shown that his failure to receive a new, air-conditioned truck significantly changed his benefits or went beyond a mere inconvenience. *See, e.g.*, *Tinkle v. Oklahoma Gas & Elec. Co.*, No. 00-6280, 16 Fed. App'x 816, 817 (10th Cir. June 29, 2001) (employer's denial of truck

assignment request does not constitute necessary adverse employment action). Accordingly, plaintiff cannot base a claim for disparate treatment discrimination on his failure to receive a new truck.

Moreover, even if plaintiff could satisfy a prima facie case, defendant has met its burden of establishing a legitimate non-discriminatory reason for the truck assignment. Defendant provided evidence that more new trucks were assigned to a different facility based on expected volume of business there and a customer's particular request; the only new truck assigned to plaintiff's facility was given to a driver with more seniority than plaintiff; no driver at plaintiff's facility with less seniority than plaintiff received a new truck; and an African-American driver at a different facility received one of the new trucks. Plaintiff has not offered any evidence or argument addressing these reasons or linking defendant's truck assignment to race. Accordingly, summary judgment is proper on this claim.[4]

### 2. DENIAL OF PROMOTION TO TRAINER

Plaintiff alleges that defendant discriminated based on his race when it promoted a different employee to a training position in April 2004. Defendant satisfied its burden under *McDonnell Douglas* by providing evidence that it chose the other employee because of the number of times that defendant had disciplined plaintiff. Moreover, defendant did subsequently promote plaintiff to the trainer position when it came open

---

[4] Plaintiff has not alleged that either Ron White or Matt Thornton was the actual decision-maker with respect to any of plaintiff's disparate treatment claims.

again. Plaintiff has offered no evidence to show that this particular reason for passing over plaintiff the first time was pretextual. Therefore, defendant is entitled to summary judgment on this claim.

### 3. LINE OF PROGRESSION

Plaintiff alleges that defendant discriminated against him with respect to his "line of progression" at the job. Defendant provided evidence that one employee was given an office position because of his superior experience and another employee received a temporary quality control position in 2003 and 2004 because a driver's license suspension prevented his work as a driver. Again, plaintiff has failed to show pretext with respect to these assignments by defendant, and summary judgment is appropriate.

### 4. LOSS OF SENIORITY UPON TRANSFER

Plaintiff alleges that defendant discriminated based on his race when he lost seniority after he requested and received a transfer to the Edwardsville facility in November 2002. First, plaintiff did not include this claim in the Pretrial Order, and the claim is therefore deemed waived. *See Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1276-77 (10th Cir. 2005). Second, even if the claim had been preserved, summary judgment would be appropriate in light of plaintiff's failure to provide any evidence of pretext with respect to defendant's evidence that all employees lost seniority if a request for transfer was granted, and that the same policy was applied to white employees.

### 5. APPLICANTS REFERRED BY PLAINTIFF

Finally, plaintiff alleges that defendant discriminated by failing to hire any

African-American job applicants referred by plaintiff. First, no such claim may be found in the Pretrial Order. Second, plaintiff has not shown how defendant's refusal to hire other individuals affected him, thereby constituting an adverse employment action against plaintiff. Therefore, summary judgment is awarded on any such claim of disparate treatment.

### 6.   SUMMARY

Plaintiff has failed to carry its burden under the applicable *McDonnell Douglas* framework with respect to any of its allegations of disparate treatment racial discrimination. Accordingly, defendant is awarded summary judgment on any such claims asserted by plaintiff.

## V.   Constructive Discharge Claim

Defendant seeks summary judgment on plaintiff's claim that he was constructively discharged from his employment with defendant. To make out a constructive discharge claim, plaintiff must show that a reasonable person would have viewed his working conditions as intolerable. *See Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir. 1998). If an employee resigns of his own free will, even as a result of the employer's actions, the employee will not be held to have been constructively discharged. *See id.* Essentially, the plaintiff must show that he had "no other choice but to quit." *Id.* (internal quotation omitted).

The Court agrees with defendant that plaintiff has failed to create a jury question

on this issue. In his brief, plaintiff deems "uncontroverted" defendant's factual statements that plaintiff voluntarily resigned his employment with defendant in September 2004; that plaintiff immediately began work for an affiliated company without missing any time; that plaintiff received higher pay and better benefits at the new job; that plaintiff desired to change employment from defendant to the other employer; and that plaintiff knew in July 2004 that he would be making the switch. These facts, if uncontroverted, establish that plaintiff left of his own free will, and therefore that he was not constructively discharged.

In his responsive brief, plaintiff does not address these facts, but instead merely points to alleged harassment as evidence that his working conditions were intolerable. Plaintiff conceded in his testimony, however, that any harassment had ceased from February 2004 to July 2004, when Jerry Dudziak (whom plaintiff decided to follow to the other employer) was plaintiff's supervisor. Most significantly, plaintiff cannot point to any testimony in which he claims that he did in fact leave because of racial harassment. Accordingly, there is no evidence from which a reasonable jury could conclude that plaintiff did not leave defendant's employ of his own free will and that he he had no other choice but to quit because of intolerable working conditions.[5] Defendant

---

[5]In an unsigned affidavit dated prior to his deposition, plaintiff stated that he began work at the new employer "as [he] could no longer work at [defendant] due to the racially hostile working environment." As set forth above, *see supra* Part II, this affidavit may not be considered for purposes of summary judgment. The Court notes, however, that even if the affidavit could be considered, this single, conclusory statement
(continued...)

17

is awarded summary judgment on this issue.

### VI.     Punitive Damages

Defendant also moves for summary judgment on plaintiff's claim for punitive damages. To establish a claim for punitive damages, plaintiff must show that defendant engaged in discriminatory practices with malice or reckless disregard to federally-protected rights. *See Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1269 (10th Cir. 2000). Recklessness and malice are to be inferred when a manager responsible for enforcing an anti-discrimination policy does not respond despite knowledge of serious harassment. *See id.*[6]

The Court concludes that the existence of recklessness or malice presents a question of fact in this case. For instance, according to plaintiff's testimony, Mr. White did not merely fail to respond to harassment of which he was aware. Rather, Mr. White was present for the daily jokes and use of the word "nigger" in addressing plaintiff, and

---

[5](...continued)
would not overcome plaintiff's deposition testimony that he resigned voluntarily and wanted to move to the new employer, and the fact that any harassment had already ceased for several months when plaintiff decided to move. *See, e.g.*, *Franks v. Nimmo*, 796 F.3d 1230, 1237 (10th Cir. 1986) (affidavit in conflict with prior sworn testimony is disregarded if attempt to create a sham fact issue for purposes of summary judgment).

[6]Defendant also invokes the good-faith defense recognized by the Supreme Court in *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). That defense applies only to a claim of vicarious liability, however. *See Deters*, 202 F.3d at 1271. Because plaintiff has indicated that he is pursuing only a claim of direct employer liability, *Kolstad* does not apply here.

he "would get a big laugh out it." Thus, viewed in the light most favorable to plaintiff, the evidence indicates that Mr. White, a supervisor charged with enforcing defendant's employment policies, engaged in conduct by which he condoned or even encouraged the racial harassment of plaintiff. Moreover, a jury could reasonably conclude that defendant acted recklessly in responding to harassment by Mr. Thornton. Summary judgment is denied on this claim.

### VII.   Motion to Amend Pretrial Order

At the time that the Pretrial Order was entered, the Court granted plaintiff's motion to amend his complaint to add a claim for punitive damages. Based on that amendment, defendant has moved for leave to amend the Pretrial Order to add a defense to that claim, specifically, the good-faith defense recognized in *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). As noted above, that defense would not apply in light of plaintiff's decision to pursue only a claim of direct liability. *See supra* Note 6. Nevertheless, because plaintiff does not oppose the amendment, defendant's motion is granted.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion for summary judgment by defendant Century Concrete, Inc. (Doc. # 40) is granted in part and denied in part. The motion is granted with respect to (1) plaintiff's claim of a

racially-hostile work environment under supervisor Jerry Dudziak from February 2004 to July 2004; (2) plaintiff's disparate treatment claims; and (3) plaintiff's claim for damages based on constructive discharge. The motion is denied with respect to (1) plaintiff's claims of a hostile work environment under supervisors Ron White and Matt Thornton, and (2) plaintiff's corresponding claim for punitive damages, and those claims remain for trial.

IT IS FURTHER ORDERED THAT defendant's motion to amend the Pretrial Order to assert a defense to plaintiff's claim for punitive damages (Doc. # 47) is granted as unopposed, and the Pretrial Order shall be deemed to include the additional defense as set forth in defendant's motion.

IT IS SO ORDERED.

Dated this 9th day of July, 2007, in Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge